# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| DISABILITY SUPPORT ALLIANCE, on behalf of its members; and MELANIE DAVIS, | Case No. _____ |
| *Plaintiffs,* | **COMPLAINT** |
| v. | **Injunctive Relief Sought** |
| MARY LOU PETERSON, in her individual capacity and in her capacity as the trustee of the Mary Lou Peterson/Trust. | |
| *Defendant.* | |

Plaintiffs Disability Support Alliance and Melanie Davis, by and through the undersigned counsel, bring this action against Defendant Mary Lou Peterson, in her individual capacity as the owner of the sole proprietorship, "Strawberry Fields/Orphanage Antiques", and in her capacity as the trustee of Mary Lou Peterson/Trust, for violations of the Americans With Disabilities Act, 42 U.S.C. § 12181, *et seq.* (the "ADA") and its implementing regulations, and for violations of the Minnesota Human Rights Act, Minn. Stat. Chapter 363A (the "MHRA"), and allege as follows:

## INTRODUCTION

1.     Plaintiffs bring this civil rights action against Defendant for failing to design, construct, and/or own or operate facilities that are fully acces-

sible to, and independently usable by, persons with disabilities. Defendant's violations discriminate against the members of Disability Support Alliance and Plaintiff Davis on the basis of their respective disabilities. Defendant has failed to remove architectural barriers at the boutique commonly known as "Strawberry Fields/Orphanage Antiques", located at 351 West Main Street, Marshall, Minnesota 56258, which prevent and/or limit the full and equal use of the boutique to persons with disabilities, even though such barrier removal is readily achievable.

2.    Defendant's failure to provide equal access to "Strawberry Fields/Orphanage Antiques" violates the mandates of the ADA and the MHRA to provide full and equal enjoyment of a public accommodation's goods, services, facilities, privileges, and advantages.

3.    Defendant's conduct constitutes an ongoing and continuous violation of the law. Indeed, as described herein, Defendant was first put on notice of accessibility violations at "Strawberry Fields/Orphanage Antiques" as far back as December 2011.

4.    Accordingly, Plaintiffs seek a declaration that Defendant's facilities violate federal law and an injunction requiring Defendant to make reasonable modifications to the facilities so that they are fully accessible to, and independently usable by, individuals with disabilities. In light of Defendant's multi-year refusal to make the "Strawberry Fields/Orphanage Antiques" accessible to persons with disabilities, Plaintiffs further request that the Court retain jurisdiction over this matter for a period to be determined to ensure

that Defendant continues to comply with the relevant requirements of the ADA.

## JURISDICTION AND VENUE

5.    Jurisdiction of this Court arises under 28 U.S.C. §§ 1331 and 1343(a)(3). This action includes federal law claims brought pursuant to Title III of the Americans with Disabilities Act, 42 U.S.C. §§ 12181–12189. The Court may exercise supplemental jurisdiction over Plaintiffs' nonfederal law cause of action, violations of the Minnesota Human Rights Act, Minn. Stat. Chapter 363A, because the claims asserted in this action arise from a common nucleus of operative fact. The Court has the jurisdiction to issue a declaratory judgment pursuant to 28 U.S.C. § 2201 and Fed R. Civ. P. 57.

6.    Venue in this judicial district is proper because Defendant is located and transacts business within this judicial district and has sufficient contacts to be subject to personal jurisdiction in this judicial district, and because this is the judicial district in which the acts and omissions giving rise to the claims occurred.

## PARTIES

7.    Plaintiff Disability Support Alliance is a Minnesota nonprofit corporation organized on July 3, 2014 under Chapter 317A of the Minnesota Statutes. Each member of the Disability Support Alliance is a person with a disability who is recognized as a protected class under federal and state law. The purpose of the Disability Support Alliance is to "eliminate discrimination on the basis of disability" and "promote the better of the lives of those living

with disabilities." Disability Support Alliance's members have long been actively promoting the Disability Support Alliance's organizational mission in their individual capacities. Disability Support Alliance's members live in Minnesota.

8.    Plaintiff Melanie Davis is a resident of the city of Marshall, Minnesota. Plaintiff suffers from, and all times relevant hereto has suffered from, a legal disability as defined by the ADA, 42 U.S.C. § 12102(2), and as defined by the MHRA, Minn. Stat. 363A.03, Subd. 12. Plaintiff is therefore a member of a protected class under the ADA, under the regulations implementing the ADA set forth at 28 C.F.R. § 36.101 *et seq.*, and under the MHRA.

9.    Ms. Davis is impaired by spastic diplegia Cerebral Palsy, a condition typified by difficulty with voluntary and passive movement in the legs. Ms. Davis' condition confines her to wheelchair for mobility when traveling outside of her home. Although Ms. Davis is capable of taking a few steps with the benefit of supports, she lacks the endurance to walk beyond the distance of a few steps from, for example, the door of a coffee shop to a table within it. As a person with a disability, she has a personal interest in having full and equal access to places of public accommodation and to the goods, services, facilities, privileges, advantages or other things offered therein.

10.    Defendant Mary Lou Peterson is the owner of "Strawberry Fields/Orphanage Antiques," a sole proprietorship with its principal place of business at 351 West Main Street, Marshall, Minnesota 56258. Ms. Peterson is the operator and lessee of the real property and improvements which are the subject of this action: a boutique located at the street address of 351 West

Main Street, Marshall, Minnesota 56258. "Strawberry Fields/Orphanage Antiques," is a place of public accommodation within the meaning of the ADA and MHRA.

11.     Defendant Mary Lou Peterson is the trustee of the Mary Lou Peterson/Trust, the owner/lessor of the real property and improvements which are the subject of this action: a building located at 351 West Main Street, Marshall, Minnesota 56258, which is occupied/leased by the boutique known as "Strawberry Fields/Orphanage Antiques."

## FACTUAL BACKGROUND

12.     In December 2011, Plaintiff Davis visited "Strawberry Fields/Orphanage Antiques" to buy furnishings for her apartment. The boutique is located less than one mile from Plaintiff Davis' apartment.

13.     When Plaintiff Davis arrived at the front entrance to the boutique, located just off of Main Street, she encountered a threshold of approximately six inches. The threshold was impassable by a person in a wheelchair.

14.     Plaintiff Davis asked her friend to watch her wheelchair, stood up, and used the wall of the entrance for support as she took a step to the doorway at the front entrance.

15.     While bracing herself in the doorway, Plaintiff Davis called into the boutique to summon assistance. Plaintiff Davis was met by an individual who, on information and belief, was Defendant Peterson.

16.    Plaintiff Davis asked Defendant Peterson if there was an accessible entrance to the boutique and explained that she required the use of a wheelchair for mobility.

17.    Defendant Peterson informed Plaintiff Davis that there was an accessible entrance at the back entrance of the store, but that it was blocked by a jukebox. Defendant Peterson further stated that her son was supposed to be selling the jukebox, and that Plaintiff Davis should not expect the jukebox to be moved anytime soon.

18.    While in the doorway, Plaintiff Davis observed that the narrow and cluttered aisles store would prevent a person in a wheelchair from safely navigating the aisles.

19.    After confirming that "Strawberry Fields/Orphanage Antiques" was unwilling to move the jukebox from blocking the accessible entrance to the premises, Plaintiff Davis returned to her wheelchair.

20.    In late July, 2014, nearly three years after her original visit, Plaintiff Davis returned to "Strawberry Fields/Orphanage Antiques", to attempt to purchase furnishings for her apartment.

21.    Plaintiff Davis observed that the front entrance was inaccessible and went around to the back entrance. When she entered the back entrance she observed a jukebox and other merchandise blocking the hallway. On information and belief, this is the same jukebox that was blocking the hallway during her visit to "Strawberry Fields/Orphanage Antiques" nearly three years prior.

22.     On August 18, 2014, Plaintiff Davis returned to "Strawberry Fields/Orphanage Antiques" accompanied by another member of the Disability Support Alliance, whose disability requires him to use a wheelchair for mobility.

23.     Upon visiting the back entrance the group encountered what, on information and belief, was the same jukebox that had blocked the path of travel from the entrance to the interior of "Strawberry Fields/Orphanage Antiques" during Plaintiff Davis' 2011 visit.

24.     The group also visited the front entrance of "Strawberry Fields/Orphanage Antiques" and confirmed that the front entrance contained an inaccessible entrance threshold.

25.     Unable to enter the premises, the group, which included Plaintiff Davis and another member of Disability Support Alliance, was deterred from visiting "Strawberry Fields/Orphanage Antiques." Plaintiff Davis and other Disability Support Alliance members would like to be able to patronize "Strawberry Fields/Orphanage Antiques", but the lack of an accessible entrance and the lack of an accessible path through the premises deter them from doing so. Plaintiff Davis and other members of the Disability Support Alliance plan to return and patronize "Strawberry Fields/Orphanage Antiques" to browse the merchandise and/or make purchases when they learn that the premises have been made accessible to persons who wheelchairs for mobility.

26.     Further ADA violations may be present inside "Strawberry Fields/Orphanage Antiques" but cannot be verified or affirmatively alleged by

Plaintiffs at this time due to their inability to enter the premises at all due to the lack of an accessible entrance.

27.    Plaintiff Davis and members of the Disability Support Alliance attempted to access Defendant's premises, but could not do so independently on a full and equal basis because of their disabilities, due to the physical barriers to access and violations of the ADA and MHRA that exist at Defendant's premises. As a result of Defendant's non-compliance with the ADA and MHRA, Plaintiff Davis and members of the Disability Support Alliance, unlike persons without disabilities, cannot independently access the facilities and/or are excluded from full and equal enjoyment of the goods, services, privileges, advantages, and/or accommodations offered therein.

## THE ADA AND ITS IMPLEMENTING REGULATIONS

28.    On July 26, 1990, President George H.W. Bush signed into law the ADA, 42 U.S.C. § 12101, *et seq.*, a comprehensive civil rights law prohibiting discrimination on the basis of disability. In its findings, Congress determined that, among other things:

    a. Some 43 million Americans have one or more physical or mental disabilities, and this number is increasing as the population as a whole grows older;

    b. Historically, society has tended to isolate and segregate individuals with disabilities, and, despite some improvements, discrimination against individuals with disabilities continues to be a serious and pervasive social problem;

    c.   Discrimination against individuals with disabilities persists in such critical areas as employment, public housing accommodations, education, transportation, communication, recreation, institutionalization, health services, voting, and access to public services;

    d.   Individuals with disabilities continually encounter various forms of discrimination; and

    e.   The continuing existence of unfair and unnecessary discrimination and prejudice denies people with disabilities the opportunity to compete on an equal basis and to pursue those opportunities for which our society is justly famous, and costs the United States billions of dollars in unnecessary expenses resulting from dependency and nonproductivity.

42 U.S.C. § 12101(a)(1)–(3), (5), (9).

29.   Congress explicitly stated that the purpose of the ADA was to:

    a.   Provide a clear and comprehensive mandate for the elimination of discrimination against individuals with disabilities;

    b.   Provide clear, strong, consistent, enforceable standards addressing discrimination against individuals with disabilities; and

    c.   Invoke the sweep of congressional authority, including the power to enforce the Fourteenth Amendment and to regulate commerce, in order to address the major areas of discrimination faced day-to-day by individuals with disabilities.

42 U.S.C. § 12101(b)(1), (2), (4).

30.   Title III of the ADA prohibits discrimination in the activities and facilities of places of public accommodation, and requires places of public accommodation to comply with ADA standards and to be readily accessible to, and independently usable by, individuals with disabilities. 42 U.S.C. § 12181–89.

31.   The ADA provided places of public accommodation one and one half years from its enactment to implement its requirements. The effective date of Title III of the ADA was January 26, 1992 (or January 26, 1993 if a business had 10 or fewer employees and gross receipts of $500,000 or less). 42 U.S.C. § 2181; 28 C.F.R. § 36.508(a).

32.   Pursuant to the mandates of 42 U.S.C. § 12134(a), the Department of Justice ("DOJ") promulgated federal regulations to implement the requirements of Title III of the ADA, which are codified at 28 C.F.R. Part 36. Appendix A of the 1991 Title III regulations (republished as Appendix D to 28 C.F.R. Part 36) contains the ADA Standards for Accessible Design, which were based upon the ADA Accessibility Guidelines ("1991 ADAAG") published by the Access Board on the same date. Public accommodations were required to conform to these regulations by January 26, 1992 (or January 26, 1993 if a business had 10 or fewer employees and gross receipts of $500,000 or less). 42 U.S.C. § 12181, *et seq.*; 28 C.F.R. § 36.508(a).

33.   In 1994, the Access Board began the process of updating the 1991 ADAAG by establishing a committee composed of members of the design and

construction industries, the building code community, and State and local government entities, as well as individuals with disabilities.

34.    In 1999, based largely upon the report and recommendations of the advisory committee, the Access Board issued a notice of proposed rule-making to update and revise the 1991 ADAAG.

35.    The Access Board issued final publication of revisions to the 1991 ADAAG on July 3, 2004.

36.    On September 30, 2004, the DOJ issued an advance notice of proposed rulemaking to begin the process of adopting the 2004 ADAAG revisions.

37.    On June 17, 2008, the DOJ published a notice of proposed rule-making covering Title III of the ADA.

38.    The long process of revising the 1991 ADAAG culminated with the DOJ's issuance of the 2010 Standards for Accessible Design ("2010 Standards"). The 2010 Standards incorporated the revised 2004 ADA Accessibility Guidelines ("ADAAG"), as well as the requirements contained in subpart D of 28 C.F.R. Part 36. The DOJ published the Final Rule detailing the 2010 Standards on September 15, 2010. The 2010 Standards became effective on March 15, 2011.

## FACTUAL ALLEGATIONS

39.    Defendant has discriminated against Plaintiff Davis and members of the Disability Support Alliance on the basis of their disabilities by failing to comply with the requirements of the ADA, the ADAAG, and the MHRA with regard to "Strawberry Fields/Orphanage Antiques". A specific,

though not exclusive, list of unlawful physical barriers and ADA violations present at "Strawberry Fields/Orphanage Antiques" which limit the ability of persons in wheelchairs to access the facilities and/or to enjoy the goods, services, privileges, advantages and/or accommodations offered therein on a full and equal basis, includes the following:

> a. There is not an accessible entrance to "Strawberry Fields/Orphanage Antiques," in violation of ADAAG 206.4 and 404. The entrance threshold has a change in level of greater than ½ inch but is not ramped, in violation of ADAAG 303 and 404.2.5.
>
> b. There is not an accessible route throughout the site and facilities, in violation of ADAAG 206.1 and 206.2.

40.    The above listing is not to be considered all-inclusive of the barriers and violations of the ADA and MHRA encountered by Plaintiffs or which exist at "Strawberry Fields/Orphanage Antiques."

41.    Due to the lack of an accessible entrance to "Strawberry Fields/Orphanage Antiques," Plaintiffs are presently unable to identify all barriers or violations which may exist on these premises and which would impact her ability to access the facilities and/or to enjoy the goods, services, privileges, advantages and/or accommodations offered therein on a full and equal basis. Therefore, in order to fully remedy the discriminatory conditions, Plaintiffs require an inspection of "Strawberry Fields/Orphanage Antiques," in order to photograph and measure all such barriers to access and violations of the ADA, ADAAG, and MHRA.

42.     Compliance with the ADA standards, the ADAAG, and the MHRA is readily achievable by Defendant due to the lack of difficulty and low cost of remedying the above-listed barriers. Many of the above-listed violations can be remedied through the same measures prescribed by federal regulation as examples of modifications that are "readily achievable."

43.     Compliance is also readily achievable due to the significant assistance available to businesses. Section 44 of the IRS Code allows a Disabled Access tax credit for small businesses with 30 or fewer full-time employees or with total revenues of $1 million or less, which is intended to offset the cost of undertaking barrier removal and alterations to improve accessibility. Section 190 of the IRS Code provides a tax deduction for businesses of all sizes for costs incurred in removing architectural barriers, up to $15,000. *See* ADA Update:       A       Primer       for       Small       Business, http://www.ada.gov/regs2010/smallbusiness/smallbusprimer2010.htm#tax (Mar. 16, 2011).

44.     As a person with a disability, Plaintiff Davis has a personal interest in having full and equal access to places of public accommodation and to the goods, services, facilities, privileges, advantages or other things offered therein. As an organization devoted to reducing discrimination against persons with disabilities, and whose members have been directly impacted by the discriminatory conditions at "Strawberry Fields/Orphanage Antiques", Disability Support Alliance has an interest in remediating the barriers at the subject premises.

45. Plaintiff Davis and other members of the Disability Support Alliance intend to visit the "Strawberry Fields/Orphanage Antiques" again in the near future, both to ascertain whether the store remains in violation of the ADA and/or MHRA, and to attempt to patronize the boutique on a full, equal, and independent basis. "Strawberry Fields/Orphanage Antiques" is located under one mile from the residences of Plaintiff Davis and another member of the Disability Support Alliance.

46. Without injunctive relief, Defendant's failure to remove accessibility barriers will continue to cause injury to Plaintiffs, who will continue to be unable to independently access "Strawberry Fields/Orphanage Antiques" and/or to enjoy the goods, services, privileges, advantages and/or accommodations offered therein on a full and equal basis, in violation of their rights under the ADA and MHRA.

## FIRST CAUSE OF ACTION
### Violations of the Americans with Disabilities Act, 42 U.S.C. §§ 12101 *et seq.*

47. Plaintiffs incorporate and reallege the above paragraphs.

48. Section 302(a) of Title III of the ADA, 42 U.S.C. §§ 12101 *et seq.*, provides:

> No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation.

49.     Under Section 302(b)(1) of Title III of the ADA, it is unlawful dis-
crimination to deny individuals with disabilities an opportunity to participate
in or benefit from the goods, services, facilities, privileges, advantages, or ac-
commodations that is equal to the opportunities afforded to other individuals.

50.     Defendant has discriminated against Plaintiffs and others in that
she failed to make her place of public accommodation fully accessible to per-
sons with disabilities on a full and equal basis in violation of 42 U.S.C.
§ 12182(a) and the regulations promulgated thereunder, including the
ADAAG, as described above. Plaintiff has been denied full and equal access to
"Strawberry Fields/Orphanage Antiques" and/or has been denied the oppor-
tunity to participate in or benefit from the goods, services, facilities, privileg-
es, advantages, or accommodations on a full and equal basis.

51.     Defendant has failed to take any prompt and equitable steps to
remedy her discriminatory conduct, despite the fact that Defendant has been
on notice of the fact that the facilities contained accessibility barriers since as
far back as December 2011. Defendant's violations of the ADA and ADAAG
are ongoing.

52.     Defendant failed to remove architectural barriers to full and
equal access by Plaintiff and other members of Disability Support Alliance,
even though compliance would have been readily achievable. Removal of the
architectural barriers would neither fundamentally alter the nature of the
business nor result in an undue burden to Defendant.

53.     Plaintiff Davis and other members of Disability Support Alliance
specifically plan to visit "Strawberry Fields/Orphanage Antiques" again in

the near future. Plaintiffs are without adequate remedy at law, have suffered and are suffering irreparable harm, and reasonably anticipates that they will continue to suffer irreparable harm upon their planned return visit to "Strawberry Fields/Orphanage Antiques" unless and until Defendant is required to remove the physical barriers to access and ADA violations that exist at Defendant's place of public accommodation, including those set forth specifically herein.

54.   This Court has authority under 42 U.S.C. § 12188 to grant Plaintiffs injunctive relief, including an order requiring Defendant to make "Strawberry Fields/Orphanage Antiques" readily accessible to and independently usable by individuals with disabilities to the extent required by the ADA and ADAAG, and/or to close "Strawberry Fields/Orphanage Antiques" until such time as Defendant cures the access barriers.

55.   Plaintiffs have retained the undersigned counsel for the filing and prosecution of this action, and is entitled to recover reasonable attorneys' fees, litigation expenses and costs from Defendant, pursuant to 42 U.S.C. §§ 12205, 12117, and 28 C.F.R. § 36.505.

## SECOND CAUSE OF ACTION
### Violations of the Minnesota Human Rights Act, Minn. Stat. Chapter 363A

56.   Plaintiffs incorporate and reallege the above paragraphs.

57.   Minn. Stat. 363A.11 provides:

It is an unfair discriminatory practice:

(1) to deny any person the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of a place of public accommodation because of […] disability […]; or

(2) for a place of public accommodation not to make reasonable accommodation to the known physical, sensory, or mental disability of a disabled person.

58.    Under the general prohibitions established by the MHRA, Minn. Stat. 363A.11, Subd. 2, it is unlawful discrimination to deny individuals with disabilities an opportunity to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodations that is equal to the opportunities afforded to other individuals.

59.    Defendant has engaged in unfair discriminatory practices against Plaintiffs and others in that it has failed to make its place of public accommodation fully accessible to persons with disabilities on a full and equal basis. The acts herein constitute violations of the MHRA, 363A.11. Plaintiffs have been denied full and equal access to "Strawberry Fields/Orphanage Antiques", and/or has been denied the opportunity to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodations offered therein on a full and equal basis.

60.    Defendant has failed to take any prompt and equitable steps to remedy its discriminatory conduct, despite the fact that Defendant has been on notice of the fact that the facilities contained accessibility barriers since at least December 2011. Defendant's violations of the MHRA are ongoing.

61.    Defendant has failed to remove architectural barriers to full and equal access by Plaintiffs and other persons with disabilities, even though

compliance would have been readily achievable. Removal of the architectural barriers would neither fundamentally alter the nature of the business nor result in an undue burden to Defendant.

62.     Plaintiff Davis and other members of Disability Support Alliance specifically plan to visit "Strawberry Fields/Orphanage Antiques" again in the immediate future. Plaintiffs are without adequate remedy at law, have suffered and are suffering irreparable harm, and reasonably anticipate that they will continue to suffer irreparable harm upon their planned return visit to "Strawberry Fields/Orphanage Antiques", unless and until Defendant is required to remove the physical barriers to access and MHRA violations that exist at Defendant's place of public accommodation, including those set forth specifically herein.

63.     This Court has authority under Minn. Stat. 363A.33, Subd. 6, and Minn. Stat. 363A.29, Subd. 3–4, to issue an order directing Defendant to cease and desist from its unfair discriminatory practices and to take affirmative action to make their facilities readily accessible to and independently usable by individuals with disabilities. The Court furthermore has authority under these statutory provisions of the MHRA to order Defendant to pay a civil penalty to the state.

64.     Plaintiffs have retained the undersigned counsel for the filing and prosecution of this action, and is entitled to recover reasonable attorneys' fees from Defendant as part of the costs, pursuant to Minn. Stat. 363A.33, Subd. 7

**WHEREFORE**, Plaintiffs respectfully request:

a. That the Court issue a Declaratory Judgment that determines that Defendant's facilities, at the commencement of the instant suit, are in violation of Title III of the ADA, 42 U.S.C. § 12181, *et seq.*, and the relevant implementing regulations including the ADAAG, and that Defendant's conduct and/or inaction constitutes an unfair discriminatory practice under the MHRA.

b. That the Court issue a permanent injunction, pursuant to 42 U.S.C. § 12188(a)(2), 28 C.F.R. § 36.504(a), Minn. Stat. 363A.33, Subd. 6, and Minn. Stat. 363A.29, Subd. 3, enjoining Defendant from continuing her discriminatory practices; including an order directing Defendant to make all readily achievable alterations to its facilities so as to remove physical barriers to access and make its facilities fully accessible to and independently usable by individuals with disabilities to the extent required by the ADA and the MHRA; and also including an order requiring Defendant to make all reasonable modifications in policies, practices or procedures necessary to afford all offered goods, services, facilities, privileges, advantages or accommodations to individuals with disabilities on a full and equal basis.

c. That the Court order Defendant to pay a civil penalty to the state pursuant to Minn. Stat. 363A.33, Subd. 6 and Minn. Stat. 363A.29, Subd. 4.

    d. That the Court award Plaintiffs their reasonable attorneys' fees, litigation expenses, and costs of suit pursuant to 42 U.S.C. § 12205, 28 C.F.R. § 36.505, and Minn. Stat. 363A.33, Subd. 7, or as otherwise provided by law; and

    e. That the Court issue such other relief as it deems just and proper, and/or is allowable under Title III of the ADA or the MHRA.


Respectfully submitted,

DATED: <u>September 3, 2014</u>


<u>/s/ Paul Hansmeier</u>
Paul R. Hansmeier (MN Bar # 387795)
CLASS JUSTICE PLLC
100 South Fifth Street, Suite 1900
Minneapolis, MN 55402
E-mail: mail@classjustice.org
Phone: (612) 326-9801